**Jon R. SWOAGER, Plaintiff,**

v.

**The CREDIT BUREAU OF GREATER ST. PETERSBURG, FLORIDA, Defendant.**

No. 83–1190–Civ–T–15.

United States District Court, M.D. Florida, Tampa Division.

April 15, 1985.

Stephen F. Hanlon, Levine, Freedman, Hirsch & Levinson, Tampa, Fla., for plaintiff.

Keith A. Ringelspaugh, St. Petersburg, Fla., for defendant.

## ORDER

CASTAGNA, District Judge.

The Court has for consideration the status of the above-styled case, which presents as matters of first impression novel issues of law concerning the proper application of the Consumer Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Although this controversy is presently set for non-jury trial in September of this year, the parties have now filed cross motions for summary judgment on the issue of liability. The mere filing of cross motions does not necessarily mandate the entry of summary judgment unless the Court in fact finds an absence of genuine issues of material fact. *See Joplin v. Bias,* 631 F.2d 1235, 1237 (5th

Cir.1980). There are no such factual disputes in this case.

The relevant facts before the Court indicate that in 1982, the defendant prepared a consumer's credit report on the plaintiff, Jon Swoager. That report, which contained two entries on the advice of Ford Motor Credit Company (FMCC) indicating that it had repossessed two Ford vehicles from the plaintiff, was distributed to the defendant's customers. Upon learning of these two entries, the plaintiff notified the defendant by letter that there was a dispute as to those entries, that FMCC had never "repossessed" any vehicle from him, and that he wished to have his statement of dispute affixed to any future credit reports. Upon receiving the plaintiff's letter, the defendant's employees contacted FMCC's representative and FMCC's attorney. Both sources indicated that the plaintiff had guaranteed two vehicles owned by Commercial Pest Control, Inc., each having been repossessed. FMCC then again requested that the repossessions be listed on the Swoager's consumer's credit report, and the defendant complied. The plaintiff's letter was added to his consumer file, and the consumer credit report reflected the disputed status of the FMCC entries.

The instant controversy ensued. The plaintiff contends that the defendant violated the Consumer Credit Reporting Act (CCRA), 15 U.S.C. § 1681, *et seq.*, by failing to follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates." *See id.* § 1681e(b).[1] The plaintiff also contends the defendant willfully failed to comply with § 1681i, which sets forth dispute resolution procedures and reinvestigation

duties when a consumer challenges the accuracy of a credit report.[2]

■ The plaintiff's claim brings into play two sections of the CCRA and seems to bootstrap the "maximum possible accuracy" provision of § 1681e(b) onto the dispute resolution and reinvestigation provisions of § 1681i. Therefore, the first matter for the Court's determination is whether § 1681e(b) and § 1681i should be read together to create a claim for failure to maintain reasonable procedures to achieve maximum possible accuracy in relation to reinvestigation and dispute resolution procedures. This uncertainty has recently been recognized elsewhere but not resolved. *See Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 55 n. 13 (D.C.Cir.1984). The parties here have briefed the issue at the Court's request. The statutory scheme set forth in the CCRA provides a distinct regulatory framework dealing with reinvestigation procedures and corrections once the credit bureau has been notified of the grievance. *See* § 1681i. This provision instructs the consumer to notify the agency of his dispute. The agency is then obligated to reinvestigate the disputed entries and to remove or correct any inaccurate or unverifiable entries. The consumer, if still not satisfied, may add a statement of dispute to his file. Section 1681e(b), in contrast, by its language appears to be aimed at insuring accuracy in the *preparation* of the consumer's credit report. Noncompliance with each of these provisions, as with failure to comply with any requirement imposed under the Act, may be remedied separately through §§ 1681n and *o. See Hauser v. Equifax, Inc.,* 602 F.2d 811, 817 (8th Cir.1979) (implying that a claim for viola-

---

1. That provision provides:
 Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

2. This section provides in part at subsection (a):
 If the completeness or accuracy of any item of information contained in his file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. If after such reinvestigation such information is found to be inaccurate or can no longer be verified, the consumer reporting agency shall promptly delete such information.

tion of § 1681i lies for negligent or willful failure to reinvestigate or correct an inaccuracy, but finding insufficient evidence in that case to go to the jury). This Court therefore finds no rationale to justify the creation of an implied, and essentially redundant, statutory duty of "maximum possible accuracy" on reinvestigation and dispute resolution procedures through § 1681e(b), when a parallel duty to delete inaccuracies already exists through § 1681i.

Admittedly, the standard of conduct imposed under § 1681i is lower than the standard of conduct imposed under § 1681e(b). *Cf.* 15 U.S.C. § 1681i (duty to reinvestigate and to delete information found to be *inaccurate* or *no longer varifiable*) *with* 15 U.S.C. § 1681e(b) (duty to follow reasonable procedures to assure *maximum possible accuracy*). But it must be remembered that § 1681i also provides the consumer with the opportunity to place a statement in his credit file which will put potential creditors on alert as to the disputed nature of the claim. In contrast, where the only information available to the creditor is that initially compiled by the credit bureau, it is essential that the compilation procedures utilized ensure maximum possible accuracy. To that extent, the functions of § 1681e(b) and § 1681i are dissimilar, and it would be incongruous to engraft the maximum accuracy dictates of the former into the context of reinvestigation and grievance procedures covered by the latter.

With this background for reference, the plaintiff's claims must be viewed as follows: a § 1681e(b) claim as to the accuracy of the initial compiled consumer credit report, and a § 1681i claim as to the reinvestigation undertaken in response to his complaint.

Concerning the first claim, the § 1681e(b) claim, the statute requires only that the defendant follow "reasonable procedures" to assure the "maximum possible accuracy" of the reported credit information. "The standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably prudent person would do under the circumstances." *Thompson v. San Antonio Retail Merchants Ass'n.*, 682 F.2d 509, 513 (5th Cir.1982).

■ The plaintiff has simply presented no evidence indicating that the defendant's initial reliance on the information provided by FMCC was not reasonable. Even assuming that FMCC's characterization of the credit reference as a repossession was incorrect, nothing in this record suggests that the defendant at that point had reason to know something was amiss. To require the defendant, under these facts, to substantiate the repossession information provided by FMCC would impose a duty of further investigation on the credit reporting agency as to virtually each and every adverse piece of credit information it receives. This burden simply outweighs any benefit that might be achieved. See *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 42 (D.C.Cir.1984), *quoting, Alexander v. Moore & Assoc., Inc.*, 553 F.Supp. 948, 952 (D.Haw.1982), where the court stated:

> Under this approach, the court, in determining whether a violation of 1681e(b) has occurred, would weigh the potential that the information will create a misleading impression against the availability of more accurate [or complete] information and the burden of proving such information.

Here, the defendant initially directly contacted the creditor, a procedure that was entirely reasonable, and there is no evidence of other inconsistencies or discrepancies that readily appeared from the face of the credit file. Therefore, the burden of further investigation on the agency would be so oppressive as to outweigh the harm it would be intended to protect against. The Court consequently finds no § 1681e(b) violation here.

As to the plaintiff's second claim, the § 1681i claim, that statute imposes two duties: a duty to reinvestigate and a duty to delete information that is found to be incorrect or that can no longer be verified. There is no dispute that the defendant's employees undertook reinvestigation proce-

dures. As to the veracity of the repossession designation, the record is also undisputed that upon reinvestigation the employees were told by FMCC that the plaintiff was a guarantor of the autos, but that FMCC wanted to show the repossession as to the plaintiff.[3] The defendant's contention essentially boils down to the argument that because it was unclear as to plaintiff's status, it was justified in following the creditor's designation.

The Court is not persuaded. Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the plaintiff and FMCC. The court in *Bryant v. TRW, Inc.*, 689 F.2d 72, 77 (6th Cir.1982) reached a similar conclusion. The *Bryant* court observed that where the agency knew of the dispute between the consumer and the creditors, and where the consumer had complained about the report, merely making two telephone calls to the creditors to check their credit reports was not a reasonable procedure to ensure maximum possible accuracy. *Id.* at 79.

The instant case, unlike *Bryant*, is not a § 1681e(b) case requiring maximum accuracy. Nevertheless, by analogy it is clear that knowledge of a dispute between the consumer and the creditor may affect the credit reporting agency's ability to rely upon the information received from the creditor upon reinvestigation. Here, the

point is not that further reinvestigation beyond the two phone calls to FMCC had to be undertaken, but rather that the reinvestigation resulted in additional information that cast doubt upon the initial accuracy of the two Ford entries. Therefore, it simply became unreasonable to rely solely upon FMCC's representatives, who obviously had a biased viewpoint, to verify the plaintiff's classification in the repossession category. The agency itself clearly bears at least some burden of evaluation, *see McPhee v. Chilton Corp.*, 468 F.Supp. 494, 496 (D.Conn.1978), and § 1681i requires deletion of information found to be "inaccurate" or that can "no longer be verified." At a minimum, the reinvestigation here revealed that the repossession classification could no longer be verified; more likely, however, it revealed that that information was simply incorrect. The Court therefore concludes that the defendant violated § 1681i in failing to delete or correct the two FMCC credit entries.[4]

As a defense to this action, the defendant has argued that the disputed FMCC entries were in fact accurate and that the plaintiff therefore has no actionable claim under the CCRA.[5] *See, e.g., Austin v. BankAmerica Service Corp.*, 419 F.Supp. 730, 732 (N.D. Ga.1974) (holding accuracy to be an absolute defense under the CCRA). In the well-reasoned opinion of *Alexander v. Moore & Assoc., Inc.*, 553 F.Supp. 948, 952–53 (D.Haw.1982), however, Judge Fong recog-

---

**3.** *See* Deposition of Jo Pratter, Consumer Relations Supervisor of the defendant, at 30, 34; Deposition of Barbara Ann Sumstad, Consumer Relations Counselor of the defendant, at 10–12. The Court recognizes that both of these depositions contain potentially inadmissible hearsay on this point. Nevertheless, neither party has objected to the consideration of the testimony, and the Court considers it competent evidence in that the parties' statements of the facts are entirely consistent with that testimony.

**4.** Assuming *arguendo* a contrary result on the § 1681e(b) issue as to reinvestigation procedures, the Court would reach this same result. As set forth above, the Court views the standard of conduct under § 1681i to be slightly lower than under § 1681e(b). It necessarily follows that the failure to correct inaccuracies upon reinvestigation also constitutes a failure to fol-

low reasonable procedures to assure maximum possible accuracy. Furthermore, independent evaluation of the reinvestigation undertaken here, for the reasons stated in the text of the opinion, exposes the unreasonableness of those procedures.

**5.** The defendant argues for the application of the accuracy defense without differentiation between the § 1681e(b) claims and the § 1681i claim. The Court finds no reason why this defense, where applicable, should not apply to the latter actions as well as the former, although the caselaw cited by the defendant seems to reference the defense in terms of § 1681e(b). Section 1681i involves the question of accuracy, just as § 1681e(b) does, but merely from the converse perspective of seeking to eradicate inaccuracy, rather than to promote accuracy.

nized that a technical truth, in essence, can be as misleading as an outright untruth were it paints an incomplete picture. As he observed:

I do not believe that the statute can be read as narrowly as the defendants propose, notwithstanding indications to the contrary by other districts. The statute does not require that a consumer reporting agency follow reasonable procedures to assure simply that the consumer report be "accurate," but to assure "maximum possible accuracy." Otherwise, it would seem that a consumer reporting agency could report that a person was "involved" in a credit card scam, and without regard to this section fail to report that he was in fact one of the victims of the scam. This result cannot have been contemplated under the Act.

*Id.* at 952. Based upon such reasoning, this Court has no difficulty in finding that the FMCC entries were sufficiently "inaccurate" or "unverifiable" to bring the strictures of § 1681i into play. Those Ford entries at best are misleading to the point of inaccuracy in that they fail to distinguish between the plaintiff's status as a guarantor as opposed to a direct obligor on the vehicles, and at worst are outright incorrect in that the vehicles were not "repossessed" from the plaintiff at all. Finally, defense counsel candidly admits that the plaintiff's legal status under the guarantee is unclear. The defendant's brief states:

We are uncertain at this time what the distinctions of law are as to whether the guaranty above places Plaintiff in a category such as can be described as one who has a repossession against him or whether he is in default of payment of debt out of which the repossession resulted.

This significant admission merely bolsters the Court's finding as to the unverifiability of the FMCC credit entries.[6]

 As to the damages recoverable for this § 1681i violation, the Court notes that § 1681n imposes civil liability for "willful noncompliance" with any requirement under the CCRA, while § 1681o imposes liability for "negligent noncompliance." There is simply no evidence of willful activity on the defendant's part here. Therefore, in briefing damages, plaintiff will be entitled to only actual damages, if any, and attorneys' fees as set forth in § 1681o, but no punitive damages.[7] Accordingly, it is

ORDERED:

1. Plaintiff's Motion for Summary Judgment is GRANTED as to liability only concerning his § 1681i claim.

2. The parties are to meet on or before April 26, 1985, in an effort to stipulate to damages and attorneys' fees. If no agreement can be reached, the plaintiff shall brief these issues on or before May 10, 1985, and the defendant shall have to and including May 20, 1985 to respond. The parties shall clearly indicate in their sub-

---

**6.** The defendant makes much of the fact that the guarantee is currently the subject of state court litigation and attempts to argue that if the plaintiff is ultimately found liable on that guarantee, its report will be accurate and immunized from suit. This sort of after-the-fact ratification, however, has nothing to do with the veracity of the two repossession entries when they were made. Even if the plaintiff loses the state court suit, it is not clear that the defendant would be accurate in classifying the vehicles as repossessed against the plaintiff himself.

**7.** The defendant's Supplement Brief In Support Of The Motion For Summary Judgment states that it "probably should have attempted to dispose of this case on an earlier motion to dismiss because there are no allegations in the original complaint nor in the First Amended Complaint that the Plaintiff's credit was turned down by anyone as a result of the disputed credit record." Even assuming actual damages to be a prerequisite under CCRA for recovery, humiliation and mental distress do constitute recoverable elements of damage under the Act, notwithstanding the absence of out-of-pocket damages. *Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509, 513 (5th Cir.1982). Humiliation and mental distress were alleged in the amended complaint, and this Order undertakes no findings as to damages. The defendant, therefore, is not precluded from pursuing this argument from the standpoint of a failure of proof at the damages hearing to be conducted later.

**978**

missions whether trial on the damages issue will be required.

3. The defendant's Motion to Dismiss First Amended Complaint is DENIED.