[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13404

_____

D.C. Docket No. 1:15-cv-03735-TWT

KATHLEEN N. PEDRO,
on behalf of herself and all others similarly situated.,

Plaintiff - Appellant,

versus

EQUIFAX, INC.,

Defendant,

TRANSUNION LLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 24, 2017)

Before WILLIAM PRYOR, MARTIN and ROSENBAUM, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether a consumer reporting agency adopted an objectively unreasonable interpretation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, when it stated on a consumer's credit report that she was an authorized user of her parents' credit card account. Kathleen Pedro's parents listed her as an authorized user on their credit card account, which later went into default. A consumer reporting agency, TransUnion LLC, listed the delinquent account on Pedro's credit report with a notation that she was an authorized user of the account. TransUnion also included the account when calculating Pedro's credit score, which caused her credit score to fall. Pedro then filed a complaint that TransUnion willfully violated a provision of the Act that requires that a consumer reporting agency "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §§ 1681e(b), 1681n. The district court dismissed the complaint for failing to allege a plausible claim for relief. Because it was not objectively unreasonable for TransUnion to interpret section 1681e(b) to permit it to report an account for which a consumer is an authorized user, we affirm.

## I. BACKGROUND

When Kathleen Pedro's parents fell ill, they designated her as an authorized user on their credit card account with Capital One. Pedro used the card to help her

2

parents make purchases and to purchase airline tickets that she used to visit her parents. She alleged that, as an authorized user, "she never assumed and had no financial responsibility for any debts on that card."

When Pedro's parents died in 2014, their account with Capital One went into default. On January 25, 2015, Pedro received an alert from a credit monitoring service that informed her that her credit score had dropped more than 100 points on her Equifax credit report. Pedro also discovered that her credit score had dropped on her TransUnion credit report, and she determined that the default on her parents' Capital One account caused the credit drop.

After Pedro complained that the delinquency on her parents' account had affected her credit, Capital One removed Pedro from the account. But TransUnion did not remove the account from Pedro's credit report. TransUnion instead listed the account on her credit report with the notation account relationship terminated. Capital One eventually requested that TransUnion and Equifax delete the account from Pedro's credit reports, and the agencies complied. Pedro alleged that her credit score then "returned to its prior excellent level."

Pedro filed a complaint in the district court that Equifax and TransUnion had willfully violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, by failing to "follow reasonable procedures to assure maximum possible accuracy" of the credit reports of authorized users of credit card accounts, *id.* §§ 1681e(b),

3

1681n. She alleged that the procedures used by Equifax and TransUnion that led them to report her parents' account on her credit report caused her credit reports to reflect a debt she did not owe, which in turn caused her credit report and score to be inaccurate. The gravamen of Pedro's complaint was that it was inaccurate to list her parents' credit card account on her credit report because it implied that she was liable on the account when she was not. She sought statutory damages, punitive damages, attorney's fees, and the certification of a class action.

Equifax moved to dismiss Pedro's complaint, Fed. R. Civ. P. 12(b)(6), and TransUnion joined the motion. The agencies argued that Pedro could not establish a willful violation of the Act because the agencies followed an objectively reasonable interpretation of the Act. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). The district court granted the motion to dismiss. It determined that Pedro failed to allege a willful violation of section 1681e(b) because it was not objectively unreasonable for the consumer reporting agencies to read section 1681e(b) to permit them to report information about accounts for which the consumer is an authorized user. Pedro appealed, and at her request, we dismissed her appeal as to Equifax.

## II. STANDARD OF REVIEW

"We review *de novo* the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and construe all the allegations

4

as true." *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1339 (11th Cir. 2017). "A plaintiff must plausibly allege all the elements of the claim for relief. Conclusory allegations and legal conclusions are not sufficient; the plaintiff[] must state a claim to relief that is plausible on its face." *Id.* at 1339–40 (citations and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that Pedro has standing because she alleged that she suffered an injury in fact. Second, we explain that the district court correctly dismissed Pedro's complaint because TransUnion could not have willfully violated the Fair Credit Reporting Act.

### A.  Pedro Alleged That She Suffered an Injury in Fact.

Article III of the Constitution of the United States "restricts the jurisdiction of the federal courts to litigants who have standing to sue." *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016). This threshold requirement "must be addressed prior to and independent of the merits of a party's claims." *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009)

5

(citation omitted). Pedro, as the party invoking federal jurisdiction, "bears the burden of proving standing." *Id.* (citation omitted).

The "irreducible constitutional minimum of standing" consists of three elements: injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). TransUnion contends that Pedro lacks standing because she failed to prove that she suffered an injury in fact. We disagree.

"An injury sufficient for standing purposes is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Common Cause/Ga.*, 554 F.3d at 1350 (quoting *Lujan*, 504 U.S. at 560). A concrete injury "must actually exist," meaning it must be "real and not abstract." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548 (2016) (citations and internal quotation marks omitted). An intangible injury, like a violation of the right to free speech, can be concrete. *Id.* at 1549.

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* "[I]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* And Congress may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (alteration adopted) (quoting *Lujan*, 504 U.S. at 578). An injury is

6

"particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1).

Pedro alleged an injury that is both concrete and particular. Pedro alleged a concrete injury because the harm caused by the alleged violation of the Act—the reporting of inaccurate information about Pedro's credit to a credit monitoring service—has a close relationship to the harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts. *See, e.g.*, Restatement (First) of Torts § 569 cmt. g (Am. Law Inst. 1938) (explaining that it is "actionable per se" to publish a false statement that another has "refus[ed] to pay his debts"). Pedro also alleged a concrete injury because she alleged that she "lost time . . . attempting to resolve the credit inaccuracies." *Cf. Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252–53 (11th Cir. 2015) (explaining that the occupation of a fax machine during the transmission of an unwanted fax constituted a concrete injury). And Pedro's alleged injuries affected her personally. Indeed, her credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint.

### B. Pedro's Complaint Failed to State a Claim.

Congress enacted the Fair Credit Reporting Act to ensure "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). In pursuit of this goal, the Act "imposes

7

a host of requirements concerning the creation and use of consumer reports,"
*Spokeo*, 136 S. Ct. at 1545, and makes any consumer reporting agency that
willfully fails to comply with one of these requirements with respect to a consumer
liable to that consumer for actual, statutory, or punitive damages, 15 U.S.C.
§ 1681n(a). Pedro argues that TransUnion willfully violated section 1681e(b) of
the Act, which states that "[w]henever a consumer reporting agency prepares a
consumer report it shall follow reasonable procedures to assure *maximum possible
accuracy* of the information concerning the individual about whom the report
relates." *Id.* § 1681e(b) (emphasis added). We disagree.

To establish that TransUnion willfully failed to comply with section
1681e(b), Pedro must establish that TransUnion either knowingly or recklessly
violated that section. *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314,
1318 (11th Cir. 2009); *see also Safeco*, 551 U.S. at 56–57. An agency recklessly
violates the Act if it takes an action that "is not only a violation under a reasonable
reading of the statute's terms, but shows that the company ran a risk of violating
the law substantially greater than the risk associated with a reading that was merely
careless." *Safeco*, 551 U.S. at 69. A consumer reporting agency that adopts a
reading of the Act that is "not objectively unreasonable" based on the text of the
Act, judicial precedent, or guidance from administrative agencies "falls well short
of raising the 'unjustifiably high risk' of violating the statute necessary for reckless

8

liability." *Id.* at 70. A consumer reporting agency that adopts an objectively reasonable reading of the Act does not knowingly violate the Act. *Id.* at 70 n.20. So contrary to Pedro's argument, if TransUnion adopted an interpretation of the Act that was not objectively unreasonable, we will not look at its subjective intent. *See Levine*, 554 F.3d at 1319 (declining to consider the subjective intent of a consumer reporting agency when it "act[ed] in accord with an objectively reasonable interpretation of the Act").

TransUnion adopted an interpretation of the Act that was objectively reasonable. TransUnion could have reasonably interpreted the Act to permit it to report that Pedro was an authorized user on her parents' credit card account because it could have understood the standard of "maximum possible accuracy," 15 U.S.C. § 1681e(b), to require only that TransUnion report information that is technically accurate. That interpretation is not objectively unreasonable because it has a "foundation in the statutory text and a sufficiently convincing justification." *Safeco*, 551 U.S. at 69–70.

Courts have offered two definitions of "maximum possible accuracy," 15 U.S.C. § 1681e(b). Some courts have ruled that the standard requires only that credit reporting agencies report information that is "technically accurate;" that is, information that is not false. *Heupel v. Trans Union LLC*, 193 F. Supp. 2d 1234, 1240 (N.D. Ala. 2002); *see Grant v. TRW, Inc.*, 789 F. Supp. 690, 692 (D. Md.

9

1992); *accord McPhee v. Chilton Corp.*, 468 F. Supp. 494, 497–98 (D. Conn. 1978). Under this approach, TransUnion complied with the Act when it reported that Pedro was an authorized user on her parents' account because that information was true. Other courts have ruled that section 1681e(b) requires that credit reporting agencies report information that is both "technically accurate" and not misleading or incomplete. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Pinner v. Schmidt*, 805 F.2d 1258, 1261, 1263 (5th Cir. 1986); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984). Under this approach, TransUnion complied with the Act when it reported that Pedro was an authorized user on her parents' account only if that information was not misleading or incomplete.

Although the better reading of the Act requires that credit reports be both accurate and not misleading, we cannot say that reading the Act to require only technical accuracy was objectively unreasonable. The definitions of "maximum," "possible," and "accuracy" suggest that the information reported by a consumer reporting agency must be free from error to the greatest extent within the power of the consumer reporting agency. *See Maximum*, *Webster's New International Dictionary* 1517 (2d ed. 1961) (defining "maximum" as "[g]reatest in quantity or highest in degree attainable or attained"); *id.* at 1927 (defining "possible" as "[w]ithin the powers of performance attainment"); *id.* at 17 (defining "accuracy" as

10

"freedom from mistake or error"). That is, in addition to being true, the information must not be misleading. But the less stringent approach of technical accuracy also has a foundation in the text. Several courts have read the Act to require only technical accuracy. *Heupel*, 193 F. Supp. 2d at 1240; *Grant*, 789 F. Supp. at 692; *McPhee*, 468 F. Supp. at 497–98. Although other courts disagree with that reading, *e.g.*, *Dalton*, 257 F.3d at 415, where the courts are divided, it was not objectively unreasonable for TransUnion to read the Act to require only technical accuracy, *cf. Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008) (Easterbrook, J.) (determining that the interpretation of a reporting agency that "conspicuous" included six-point type was objectively reasonable where courts of appeals disagreed on the interpretation of "conspicuous"). Because the reading adopted by TransUnion "has a foundation in the statutory text and a sufficiently convincing justification to have persuaded [multiple courts] to adopt it," *Safeco*, 551 U.S. at 69–70, that reading was not objectively unreasonable even though we disagree with it.

Pedro also fails to cite any authority that "might have warned [TransUnion] away from the view it took." *Id.* at 70. Pedro cites no judicial precedent or agency guidance that states that reporting information about accounts for which a consumer is an authorized user fails to meet the standard of maximum possible accuracy. To the contrary, at least one district court has held that it is not

11

inaccurate to list authorized user information on a credit report. *See Bailey v. Equifax Info. Servs., LLC*, No. 13-10377, 2013 WL 3305710, at *6 (E.D. Mich. July 1, 2013).

Because TransUnion adopted an interpretation of the Act that was not objectively unreasonable, it did not willfully violate the requirement that it follow reasonable procedures to assure the maximum possible accuracy of reported information. TransUnion could reasonably interpret the Act to permit it to report information that was technically accurate: that Pedro was an authorized user of her parents' credit card account. TransUnion could not have willfully violated the requirement that it adopt reasonable procedures to assure maximum possible accuracy if, under a reasonable interpretation of the Act, the information it reported met the standard of maximum possible accuracy.

Pedro contends that TransUnion willfully violated section 1681e(b) even under the approach of technical accuracy, but she fails to identify any false information reported by TransUnion. She maintains that reporting the credit delinquencies of her parents on her credit report cannot be "technically accurate" because it caused her credit report to list the credit history of someone other than her. But TransUnion listed that information on Pedro's credit report with the notation "authorized user," and Pedro admits that she was an authorized user of her

12

parents' account. Because the information TransUnion reported was true, it met the standard of technical accuracy.

Pedro also asserts that TransUnion willfully violated section 1681e(b) when it reported information about her parents' credit card account on her credit report because the information did not "concern[] the individual about whom the report relates," 15 U.S.C. § 1681e(b), but it was not objectively unreasonable for TransUnion to determine that information about a credit card account for which an individual is an authorized user concerns that individual. Although Pedro asserts that she was not financially liable for debts on her parents' credit card account, her name was on the account and she used the credit card to make purchases. It was reasonable for TransUnion to determine that information about the account concerned Pedro.

Finally, Pedro argues that "[w]illfulness is a question of fact almost never suitable to resolution on a motion to dismiss," but we disagree. District courts may, and often do, determine on the pleadings that a plaintiff failed to plead willfulness when the interpretation of the relevant statute by the consumer reporting agency was not objectively unreasonable. *See King v. MovieTickets.com, Inc.*, 555 F. Supp. 2d 1339, 1342–43 (S.D. Fla. 2008); *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d 665, 678 (E.D. Pa. 2015); *see also Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 795–96, 803–04 (7th Cir. 2010) (affirming the dismissal of a

13

complaint where it was objectively reasonable for an agency to interpret a provision in the Fair and Accurate Credit Transactions Act not to apply to email receipts); *Long  v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012) (same). And although Pedro states that *Hinkle v. Midland Credit Management, Inc.* establishes that willfulness is almost never resolvable on a motion to dismiss, the consumer reporting agency in *Hinkle* did not argue that it had adopted an objectively reasonable interpretation of the Act. 827 F.3d 1295 (11th Cir. 2016). As a result, we did not address whether the interpretation of the agency was objectively reasonable.

The district court correctly dismissed Pedro's complaint. TransUnion interpreted section 1681e(b) to permit it to report information that was technically accurate, such as Pedro's status as an authorized user on her parents' credit card account. That interpretation was not objectively unreasonable based on the text of the Act, judicial precedent, and guidance from administrative agencies. Because TransUnion adopted an interpretation of the Act that was objectively reasonable, TransUnion did not willfully violate the Act.

## IV. CONCLUSION

We **AFFIRM** the dismissal of Pedro's complaint.

14

ROSENBAUM, Circuit Judge, concurring:

I agree with the panel opinion.  I write separately, though, to address in more depth some of the issues this appeal raises.

## I.

## A.

We have previously described the twin goals of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, as "ensuring that [credit-reporting] agencies imposed procedures that were . . . 'fair and equitable to the consumer,' . . . [and] that also met the 'needs of commerce' for accurate credit reporting."  *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991) (quoting 15 U.S.C. § 1681(b)).  Towards those ends, 15 U.S.C. § 1681e(b) requires that [w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

Here, the dispute concerns the meaning of "maximum possible accuracy" within § 1681e(b).  All four Circuits that have opined on this phrase have agreed that it means something more than "technical accuracy."  *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010) (describing the "distinction between 'accuracy' and 'maximum possible accuracy'" as "quite dramatic"); *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) ("A report is

15

inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse []' effect") (citation omitted); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 n.4 (D.C. Cir. 1984) ("We think it clear that Congress meant the Act to address more than technically inaccurate reports."); *Pinner v. Schmidt*, 805 F.2d 1258, 1262-63 (5th Cir. 1986); *cf. Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (discussing the difference between "technical[] [in]accura[cy]" and "inaccurate" while opining on the meaning of the phrase "if the investigation finds that the information is incomplete or inaccurate," found within 15 U.S.C. § 1681s-2(b)(1)(D)).

Rather, based on the language of the phrase and the purpose of the FCRA, these courts have determined that "maximum possible accuracy" means that a report must not be misleading or incomplete. *See Cortez*, 617 F.3d at 709; *Dalton*, 257 F.3d at 415; *Koropoulos*, 734 F.2d at 40-44; *Pinner*, 805 F.2d at 1262-63. As the Fourth Circuit has explained, "A report is inaccurate . . . when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton*, 257 F.3d at 415 (alteration, quotation marks, and citation omitted).

Judge Fong succinctly and effectively explained the practical and important difference between a report that is "technically accurate" and one that has

16

"maximum possible accuracy":  it's the difference between "report[ing] that a person was 'involved' in a credit card scam" and "report[ing] that he was in fact one of the victims of the scam."  *Alexander v. Moore & Assocs., Inc.*, 553 F. Supp. 948, 952 (D. Haw. 1982); *see also Pinner*, 805 F.2d at 1263 (quoting Judge Fong's explanation, as quoted in *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972, 977 (M.D. Fla. 1985)); *Cortez*, 617 F.3d at 709 (quoting *Pinner*'s reliance on Judge Fong's explanation).

But though § 1681e(b) speaks of "maximum possible accuracy," it also qualifies the limits of the required "maximum possible accuracy."  A credit-reporting agency need only follow "reasonable procedures to assure maximum possible accuracy."  15 U.S.C. § 1681e(b).

The District of Columbia Circuit has construed this language to impose a balancing test.  *Koropoulos*, 734 F.2d at 42.  Under this balancing test, the court "weigh[s] the potential that the information will create a misleading impression against the availability of more accurate [or complete] information and the burden of providing such information."  *Id.* (quoting *Alexander*, 553 F. Supp. at 952) (quotation marks omitted).  The greater the potential to mislead (meaning, "the greater the harm [the information] can cause the consumer") and the more readily available "clarifying information," the higher the reporting agency's burden to provide the clarifying information.  *Id.* (quoting *Alexander*, 553 F. Supp. at 952)

17

(quotation marks omitted).  But on the other side of the coin, a reporting agency need not undertake a burdensome task to provide clarifying information when "the misleading information is of relatively insignificant value" and the agency's procedures are otherwise reasonable.  *Id.* (quoting *Alexander*, 553 F. Supp. at 952) (quotation marks omitted); *see also Cortez*, 617 F.3d at 709 ("Judging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.") (citation and quotation marks omitted).

## B.

With these standards in mind, I consider whether TransUnion's reporting of Pedro's parents' delinquent account information on Pedro's credit report satisfied the "maximum possible accuracy" standard.  First, we must assess whether the inclusion of the information was misleading in a harmful way.  Clearly, it was.

True, TransUnion reported that Pedro was only an authorized user on her parents' account.  TransUnion also asserted during oral argument that those who use the reports would understand from the code TransUnion used to report her authorized-user status that Pedro was not financially responsible for her parents' delinquent account.  But significantly, the report appears to give no indication that including this account information caused Pedro's credit score to drop more than 100 points.  That 100-point-plus drop—due to no fault of Pedro's—harmed Pedro

18

in that it "reduc[ed] . . . her ability to obtain credit, . . . increase[d] . . . the cost of obtaining such credit that she was able to secure, los[t] [her] economic opportunities, and los[t] [her] creditworthiness." Compl., ¶ 30. Yet the information did not accurately reflect on her personal creditworthiness. Indeed, almost as soon as the information was removed, Pedro's credit rating returned to its "prior excellent level." *Id.* at ¶ 29.

We have said that FCRA's goals include fairness and equity to the consumer while still meeting the needs of commerce for accurate information in credit reports. Reporting delinquent "authorized user" accounts where the user is not financially responsible for the debt, without indicating how including such information in the credit score affects the credit score meets neither goal. Rather, stating the consumer's credit score both with and without accounts for which she is not financially responsible gives the consumer and those who rely on credit reports the fairest, most accurate, and least misleading picture of the consumer's credit. And for this reason, it much better satisfies the purposes of FCRA than the reporting practice at issue here.

But that is not the end of the analysis. We must also consider the burden on TransUnion to provide such information in its credit reports. TransUnion uniquely possesses the information necessary to evaluate the burden such a procedure would place on it. For that reason, this part of the inquiry of whether Pedro stated a claim

19

that TransUnion violated § 1681e(b) often will be inappropriate for resolution at the motion-to-dismiss stage.

## II.

Here, though, we need not remand this matter to the district court for further proceedings because Pedro alleges only a willful violation.  And for the reasons my colleague has explained, she cannot show that.