PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

RICHARD J. DALTON,
          *Plaintiff-Appellant,*

v.

CAPITAL ASSOCIATED INDUSTRIES,
INCORPORATED; GEORGE E. SHELTON,
III; WAYNE L. LEHTO; JOHN B.
GUPTON,
          *Defendants-Appellees.*

No. 00-2337

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-99-356-5-3-BR)

Argued: April 4, 2001

Decided: July 16, 2001

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Michael wrote the opinion, in which Judge Williams and Judge
Motz joined.

## COUNSEL

**ARGUED:** R. Frost Branon, Jr., Charlotte, North Carolina, for
Appellant. Samuel Reid Russell, III, PATTERSON, DILTHEY,
CLAY & BRYSON, L.L.P., Raleigh, North Carolina, for Appellees.

**ON BRIEF:** Ronald C. Dilthey, PATTERSON, DILTHEY, CLAY & BRYSON, L.L.P., Raleigh, North Carolina, for Appellees.

---

**OPINION**

MICHAEL, Circuit Judge:

Capital Associated Industries, Inc. (CAI) erroneously reported to Richard Dalton's prospective employer that he had been convicted of felony assault. Dalton sued CAI and three of its employees under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681e(b) and 1681k, for following inadequate procedures in reporting his criminal history. Dalton also asserted several state law claims against the defendants. The district court threw out all of Dalton's claims, with some dismissed under Rule 12(b)(6) and some disposed of on summary judgment under Rule 56. This appeal deals only with the summary judgment and focuses mainly on whether there are triable issues on Dalton's claims that CAI's failure to follow FCRA-mandated procedures led it to issue a false report on his criminal record. We vacate the award of summary judgment to CAI on Dalton's FCRA claims because he has proffered evidence that reveals disputed issues of material fact. We affirm the grant of summary judgment on all other claims.

I.

Because Dalton was the nonmovant in the summary judgment proceedings, we recite the facts in the light most favorable to him, drawing all justifiable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In early May 1998 Dalton had a job interview with Sumitomo Electric Lightwave Corp. (Sumitomo) at its offices in Research Triangle Park, North Carolina. Dalton, who was seeking the position of West Coast Regional Sales Manager, filled out an employment application during his visit with the company. The application form asked whether Dalton had been convicted of a felony in the past seven years. In 1993 Dalton was charged in Colorado with second degree assault, a felony, but he ultimately pled guilty to third degree assault, a misdemeanor. Accordingly, he truth-

fully stated on the application that he had not been convicted of a felony. At the end of the interview Sumitomo offered Dalton the sales manager position "contingent upon . . . successful completion of educational, employment and criminal background investigations."

To conduct the criminal background check on Dalton, Sumitomo engaged CAI, a North Carolina-based employers' association that provides a variety of services for its members, including background investigations on job applicants. Sumitomo specifically asked CAI to investigate whether Dalton had a criminal record anywhere in the Denver, Colorado, area, where Dalton had lived until shortly before his interview. CAI did not perform the criminal records investigation itself. Rather, it engaged SafeHands, Inc. to perform the task. CAI had been using SafeHands to do criminal background investigations for about a year and had found the firm to be reliable. But SafeHands did not perform the Dalton check either; SafeHands hired Guaranty Research Services, Inc. (GRS). GRS, from its own offices, ran a statewide computer search of criminal records for all Colorado counties. This search revealed that Dalton had a criminal record in Jefferson County. Because the computer database did not reveal the nature of the charge, a GRS employee called the Jefferson County clerk's office. A clerk told the GRS employee that Dalton had been convicted of third degree assault, which the clerk erroneously said was a felony. GRS sent this information — that Dalton had been convicted of a felony, third degree assault — to SafeHands without taking any steps to verify its accuracy. SafeHands, in turn, sent it to CAI, which delivered it to Sumitomo. Neither CAI nor SafeHands took any independent steps to verify the substance of GRS's criminal history report on Dalton.

While Sumitomo was waiting for the results of the criminal records check, it proceeded to verify Dalton's employment history. Sumitomo discovered that he had significantly misstated his periods of employment with two prior employers. Dalton reported on his application that he had worked for Fiber Optic Network Solutions from January 1991 through January 1992; in fact, he had worked for that firm from June 1992 through December 1992. Dalton reported that he had worked for Telect, Inc. from 1989 through 1991, but in fact he had only worked there from February 1991 through December 1991.

Based upon the results of the criminal and employment background checks, Sumitomo decided to withdraw its offer to Dalton, pending further investigation. On May 14, 1998, a Sumitomo representative called Dalton, informing him that the offer was being withdrawn because he had been convicted of a felony. (The representative did not mention the inaccurate employment history appearing in Dalton's application.) Dalton denied that he had been convicted of a felony, and the representative promised to call CAI to confirm the accuracy of the criminal records check. The Sumitomo representative called Dalton back a half-hour later and told him that CAI was standing by its report that he had a felony conviction. CAI, nevertheless, began to reinvestigate whether Dalton was a convicted felon.

The next day, May 15, 1998, Dalton called CAI directly to challenge the accuracy of its records check. CAI claims that by the time Dalton called, it had discovered that he was not a convicted felon. According to CAI, it told Dalton during this conversation that it had made a mistake. Dalton, on the other hand, claims that CAI told him that it was standing by its report. Regardless, sometime that day CAI discovered its mistake and contacted Sumitomo to correct the initial report. Wayne Lehto, a CAI representative, called the Jefferson County, Colorado, clerk's office. The clerk who answered the telephone told Lehto that Dalton had been convicted of third degree assault, which the clerk said was a felony. However, when Lehto pressed the clerk about whether third degree assault was really a felony, the clerk transferred Lehto to another court clerk. The second clerk informed Lehto (correctly) that third degree assault was a misdemeanor, not a felony. Lehto telephoned Sumitomo immediately, advising the company that CAI had made a mistake and that Dalton had only been convicted of a misdemeanor. According to Dalton, no one from Sumitomo or CAI ever told him that the mistake had been corrected.

Sumitomo spent the next few weeks reevaluating Dalton's employment application. A company representative again contacted Dalton's previous employers, this time for recommendations. Two of these prior employers said that they would not rehire Dalton. A Sumitomo human resources manager called Dalton about the inaccuracies in his employment history. According to the manager, he asked Dalton on two separate occasions to provide Sumitomo "with a written explana-

tion of the discrepancies." Dalton did not respond. Because he failed to submit a written explanation, Sumitomo decided not to consider him any further for the regional sales manager position. On June 16, 1998, Sumitomo wrote Dalton as follows: "Based on the discrepancies in your background check and the length of time it is taking for you to provide clarifying information we will no longer consider you as a candidate for employment." Sumitomo eventually hired another person to fill the job.

Dalton sued CAI and three of its employees, claiming that they violated FCRA, committed libel per se, intentionally interfered with his prospective economic advantage, and violated the North Carolina Unfair Trade Practices Act (UTPA). The district court dismissed Dalton's UTPA claim and his FCRA claims against the three employees of CAI. Later, the district court granted summary judgment to CAI on Dalton's FCRA claims and summary judgment to all four defendants on Dalton's claims for libel and interference with prospective economic advantage. Dalton appeals the summary judgment order, but not the order dismissing his UTPA claim or his FCRA claims against the individual defendants. We review the district court's grant of summary judgment de novo. *See Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988).

## II.

Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91-517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); *see also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989); *Hovater v. Equifax, Inc.*, 823 F.2d 413, 416-17 (11th Cir. 1987). Employers were placing increasing reliance on consumer reporting agencies to obtain information on the backgrounds of prospective employees. Congress found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment. As Representative Sullivan remarked, "with the trend toward . . . the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a

stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable." 116 Cong. Rec. 36570 (1970). In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information. Two of these measures, 15 U.S.C. §§ 1681e(b) and § 1681k, deal with the procedures consumer reporting agencies must follow when collecting and transmitting information. Congress also gave individuals the right to sue reporting agencies for violations of FCRA. *Id.* §§ 1681n, 1681o.

CAI is a consumer reporting agency that is subject to FCRA. Dalton claims that CAI used inadequate procedures in reporting about his criminal history in violation of §§ 1681e(b) and 1681k. In considering Dalton's argument that the district court erred in granting summary judgment to CAI on his FCRA claims, we take up three issues: first, whether there is a material factual dispute concerning Dalton's claims that CAI violated its duties under §§ 1681e(b) and 1681k; second, whether Dalton has proffered sufficient evidence to show that CAI's violations were either negligent or willful; and third, whether we may affirm CAI's summary judgment on the alternative ground (not relied upon by the district court) that Dalton has not suffered any damages due to CAI's actions.

A.

Dalton's first FCRA claim is that CAI followed unreasonable procedures in violation of § 1681e(b) when it prepared the report for Sumitomo about his criminal history. Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Thus, a consumer reporting agency violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy. *See, e.g., Guimond*, 45 F.3d at 1333; *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984). The district court concluded that CAI's report to Sumitomo contained accurate information about Dalton's criminal

record and that CAI used reasonable procedures in preparing the report. The current record does not support these conclusions.

CAI claimed in its motion for summary judgment, and the district court agreed, that CAI reported accurate information. Dalton, however, proffered specific facts that create a triable issue of fact on the question of accuracy. To make out a "violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond*, 45 F.3d at 1333. *See also Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 964 (3d Cir. 1996); *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Cahlin*, 936 F.2d at 1156; *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 39 (D.C. Cir. 1984). A report is inaccurate when it is "patently incorrect" or when it is "misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]" effect. *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998).

The accuracy issue in this case turns on whether CAI's report indicates that Dalton had been convicted of a felony. CAI's report stated that the following record about Dalton "was found to be on file" in the clerk's office in Jefferson County, Colorado:

> 93F1735 - 9/26/93 - Felony - Third degree assault - 1/26/94 - Guilty - 710 days suspended sentence, 20 days jail sentence, 2 years probation

CAI argues that the report is accurate because it does not explicitly state that Dalton was guilty of a felony. However, a reasonable jury could read the report as plainly indicating that Dalton was found guilty of a felony, third degree assault. (Third degree assault is actually a misdemeanor in Colorado.) The report gives no indication that Dalton pled guilty to a crime that was different from the felony that was charged. If a jury concludes, as it reasonably could, that the report indicates that Dalton was guilty of a felony, inaccuracy would be established because it is undisputed that Dalton pled guilty to a misdemeanor. In short, the evidence in the summary judgment record is sufficient to create a triable issue on the accuracy of the report.

We next consider whether the district court erred in concluding that CAI "follow[ed] reasonable procedures to assure maximum possible accuracy of the information" about Dalton, as required by § 1681e(b). We note first that the circuits appear to be split on who bears the burden of proof on this issue. Specifically, must the plaintiff show that the reporting agency did not follow reasonable procedures, or must the agency show that it did? *Compare Stewart*, 734 F.2d at 51 & n.5 (holding that plaintiff bears the burden), *with Guimond*, 45 F.3d at 1333 (suggesting that consumer reporting agency bears the burden); *Cahlin*, 936 F.2d at 1156 (same). Nothing in the statute suggests that a plaintiff is relieved of the burden of showing that the agency failed to follow reasonable procedures. *See, e.g.*, *Edison v. Dep't of Army*, 672 F.2d 840, 842 (11th Cir. 1982) (applying the "traditional rule imposing the burden of proof on the plaintiff" when the statute is silent as to who bears the burden). Indeed, § 1681e(b) stands in contrast to two other FCRA sections, in which Congress explicitly places the burden on the consumer reporting agency to show the reasonableness of its procedures when it seeks to avail itself of liability exemption provisions. *See* §§ 1681d(c), 1681m(c); *see also Stewart*, 734 F.2d at 51 n.5 (concluding that these sections show that Congress "'knew how' to shift the burden from plaintiff" to the consumer reporting agency). Therefore, we hold that the plaintiff bears the burden under § 1681e(b) to show that the consumer reporting agency did not follow reasonable procedures.*

The issue of whether the agency failed to follow "reasonable procedures" will be a "jury question[ ] in the overwhelming majority of cases." *Guimond*, 45 F.3d at 1333. *See also Andrews v. TRW Inc.*, 225 F.3d 1063, 1068 (9th Cir. 2000) ("It would normally not be easy for a court as a matter of law to determine whether a given procedure was reasonable in reaching the very high standard set by the statute . . . ."); *cf. also Stewart*, 734 F.3d at 51 (stating that a plaintiff need only "minimally present some evidence" of unreasonableness). This case is easily grouped within the "overwhelming majority of cases." *Guimond*, 45 F.3d at 1333. Specifically, Dalton has created a dispute of material fact as to whether CAI followed unreasonable procedures by

---

*We express no view as to whether an inaccuracy can be so egregious that it creates a presumption that the agency's procedures were unreasonable. *See Philbin*, 101 F.3d at 965-66; *Stewart*, 734 F.2d at 52.

failing to instruct its subvendors on the proper sources of criminal history information. CAI engaged SafeHands, which in turn engaged GRS. After GRS discovered through its own computer search that Dalton had a criminal record in Jefferson County, Colorado, it called the clerk's office there. The record suggests that GRS did not simply rely on the clerk to read information from Dalton's case file or from the clerk's computer database. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994) (holding that reliance on actual court records constitutes a reasonable procedure). Instead, the inference is that the clerk read from the computer database that Dalton had been convicted of third degree assault, but then offered his or her own legal opinion that third degree assault is a felony under Colorado law. CAI had no procedures governing the sources that a subvendor could rely upon in collecting information for a criminal background report. A jury could properly conclude that it was an unreasonable procedure to rely on a clerk's informal opinion on the crucial question of whether a specific crime is a felony and that CAI should have had procedures in place to instruct its subvendors on the appropriate sources for reliable information about a person's criminal record. Accordingly, the district court erred in granting summary judgment in favor of CAI on the issue of whether it failed to follow reasonable procedures.

Dalton's second FCRA claim is that CAI violated § 1681k. Section 1681k deals with consumer reports in the employment context. (Section 1681e(b), which we just discussed, regulates the preparation of consumer reports in general.) Section 1681k creates heightened standards for procedures used to collect information for employment purposes. To fall within this section, the consumer report must contain matters of public record that are likely to have an adverse effect upon a consumer's ability to obtain employment. *Id.* § 1681k. When a consumer reporting agency furnishes such a report, it is obligated to do one of two things. The agency must either notify the consumer at the time the report is transmitted to the user or "maintain strict procedures designed to ensure that [the information] . . . is complete and up to date." *Id.* § 1681k(1), (2). CAI concedes that its report of Dalton's criminal history information falls within this section. CAI further concedes that it did not notify Dalton at the time it reported his criminal history information to Sumitomo. The issue, then, is whether there is a disputed issue of fact over whether CAI maintained "strict proce-

dures" to ensure that Dalton's criminal record was complete and up to date. Because (as we held above) there is a factual dispute over whether CAI followed reasonable procedures, we necessarily hold that there is a factual dispute over whether it followed strict procedures. We leave for another day the determination of what constitutes "strict," as opposed to "reasonable," procedures. *See Equifax v. FTC*, 678 F.2d 1047, 1049 n.4 (11th Cir. 1982) (noting that the distinction between strict and reasonable procedures is "clearly not without significance"); *Obabueski v. IBM Corp.*, 137 F. Supp. 2d 320, 348 (S.D.N.Y. 2001) (same). For these reasons, we conclude that the district court erred in granting summary judgment to CAI on the issue of whether CAI followed strict procedures.

B.

Dalton argues that the district court erred in its conclusion that "[e]ven assuming CAI violated" the provisions of FCRA, there is no liability because CAI did not act either willfully or negligently. FCRA does not impose strict liability on consumer reporting agencies for inaccuracies in reporting. Instead, FCRA imposes liability for negligent noncompliance with the Act, and it allows for enhanced penalties for willful violations. *See* 15 U.S.C. §§ 1681n, 1681o. Here, Dalton has proffered evidence to show that CAI was negligent, but not willful, in failing to follow required procedures.

A showing of malice or evil motive is not required to prove willfulness under the Act. *See, e.g.*, *Stevenson v. TRW, Inc.*, 987 F.2d 288, 294 (5th Cir. 1993); *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967, 972 (4th Cir. 1987). The plaintiff must only show that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights" of the consumer. *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986). *See also Stevenson*, 987 F.2d at 294; *Yohay*, 827 F.2d at 972. Even though summary judgment is "seldom appropriate" on whether a party possessed a particular state of mind, evidence that CAI acted willfully is wholly lacking. *See Magill v. Gulf & W. Indus., Inc.*, 736 F.2d 976, 979 (4th Cir. 1984). Dalton has not shown, for example, that CAI was aware that its subvendors relied upon informal legal opinions from court clerks. There is no evidence that other consumers have lodged complaints similar to Dalton's against CAI. Indeed, CAI had used SafeHands for

about a year and had found the firm to be reliable. Further, CAI corrected its mistake one day after Dalton challenged the accuracy of the report. Accordingly, no reasonable jury could conclude that CAI acted willfully in violating §§ 1681e(b) or 1681k. Nevertheless, a jury could properly conclude that CAI acted negligently. CAI had no procedures in place to instruct its subvendors on the appropriate sources for reliable information on criminal records. A reasonable jury could conclude that CAI's failure to have such procedures was a negligent violation of FCRA.

## C.

CAI argues that we may affirm its award of summary judgment on Dalton's FCRA claims on the ground that Dalton cannot show that he suffered damages due to any action by CAI. The district court did not rely on this ground. However, in dismissing Dalton's interference with prospective economic advantage claim, the court concluded that "plaintiff's alleged injury, i.e., not obtaining employment with Sumitomo, did not result from defendants' actions." CAI argues that this same analysis applies to Dalton's FCRA claims. We agree with the district court that Dalton cannot show that CAI's false report played a role in Sumitomo's decision not to hire him for the position. CAI promptly corrected its mistake, informing Sumitomo that Dalton had not been convicted of a felony. Sumitomo then continued to consider Dalton for the sales manager position. Sumitomo ultimately decided not to hire him because he failed to submit a written explanation on the inaccuracies in his application relating to his employment history.

Even though CAI's false report is not what prevented Dalton from getting a job with Sumitomo, we are hesitant to say that the district court necessarily would have concluded that Dalton could not show that CAI caused him any damages on his FCRA claims. On his interference claim Dalton had to show that damages arose out of Sumitomo's decision to terminate relations with him. *See, e.g.*, *Burgess v. Busby*, 544 S.E.2d 4, 9-10 (N.C. Ct. App. 2001). On his FCRA claims Dalton need only show that he suffered damages from the false report, regardless of how Sumitomo reacted to the report. Specifically, Dalton alleges that he suffered emotional distress and loss of reputation as a result of the false report. Damages for such injuries are recoverable under FCRA. *See Cousin v. Trans Union Corp.*, 246 F.3d 359,

369 n.15 (5th Cir. 2001); *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998); *Guimond*, 45 F.3d at 1333; *Zamora v. Valley Fed. Savs. & Loan Ass'n*, 811 F.2d 1368, 1371 (10th Cir. 1987). We decline to affirm the award of summary judgment on the FCRA claims against CAI on the alternative ground (not considered by the district court) that Dalton cannot prove any damages whatsoever. Nevertheless, the question of whether Dalton can prove damages for emotional distress or loss of reputation under his FCRA claims may be considered in summary judgment proceedings on remand, if the appropriate motion is made.

### D.

For the foregoing reasons, we vacate the grant of summary judgment to CAI on Dalton's claims under §§ 1681e(b) and 1681k of FCRA.

### III.

Dalton also appeals the award of summary judgment to CAI and the three individual defendants on his state law claims for libel and interference with prospective economic advantage. After considering the briefs, the joint appendix, and the oral arguments of counsel, we rely substantially on the reasoning of the district court to affirm the summary judgment for the defendants on these two claims. *See Dalton v. Capital Associated Indus., Inc.*, No. 5:99-CV-356-BR(3), at 3-7 (E.D.N.C. Sept. 7, 2000).

### IV.

We vacate the judgment insofar as it awards summary judgment to CAI on Dalton's FCRA claims, and we remand for further proceedings on those claims. The judgment is otherwise affirmed.

*AFFIRMED IN PART, VACATED*
*IN PART, AND REMANDED*