352 F.3d 896
 Earle E. AUSHERMAN; Stephanie Ball; William Close; Ricardo Colon; Frank Collins; Kirk Decosmo; John Elder; Anna Hamilton; Paul Simons; Arlen Slobodow; Guy Thomas; Ludmilla Werbos; Paul Werbos; Ronnie C. Hogue; Shauna Hunter; Richard L. Lammonds; Benjamin Salazar; Sherwood Schwarz, Plaintiffs-Appellants,
and
Rhoda Brown; Pamela Schwerdt; Deborah Steelman; Leslie Jones; Neil Kramer; Kent Linduff; Margaret Morrison; Charles Park; Mordechai Rabinowitz; Freda D. Hogue, Plaintiffs,
v.
BANK OF AMERICA CORPORATION, a/k/a Banc of America, d/b/a Bank of America Auto; John Doe, I, a currently unidentified employee of defendant Bank of America; Joe Doe, II, a currently unidentified co-conspirator of defendant John Doe Number 1; Banc of America Auto Finance Corporation, Defendants-Appellees.
 No. 03-1375.
 United States Court of Appeals, Fourth Circuit.
 Argued: October 28, 2003.
 Decided: December 19, 2003.
 
 ARGUED: Rodney Ray Sweetland, III, Washington, D.C., for Appellants.
 Ava Elaine Lias-Booker, Jennifer Brune Speargas, SAUL EWING, L.L.P., Baltimore, Maryland, for Appellees.
 ON BRIEF: David E. Ralph, SAUL EWING, L.L.P., Baltimore, Maryland, for Appellees.
 Before MOTZ, TRAXLER, and KING, Circuit Judges.
 Affirmed by published opinion. Judge MOTZ wrote the opinion, in which Judge TRAXLER and Judge KING joined.
 OPINION
 DIANA GRIBBON MOTZ, Circuit Judge.
 
 
 1
 Earle E. Ausherman and other individual consumers ("Plaintiffs") brought this action, alleging that Banc of America Auto Finance Corporation ("BAAF"), willfully or negligently violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (2000) (the "Act" or "FCRA"), and the analogous Maryland Consumer Credit Reporting Agencies Act, Md.Code Ann., Com. Law § 14-1201 et seq. (2000). Because Plaintiffs presented no evidence that BAAF acted willfully or negligently, we affirm the district court's grant of summary judgment to BAAF.
 
 I.
 
 2
 Plaintiffs are a number of unrelated individuals, whose credit reports between November 1999 and July 2000 list "Banc of America Auto" among the "companies [that] have received" their reports. None of the Plaintiffs had a relationship with BAAF during this time frame that would have justified or explained a BAAF credit inquiry.
 
 
 3
 BAAF itself is not a consumer reporting agency. Rather, BAAF is a customer-subscriber of a consumer reporting agency, Trans Union Corporation, which issued the credit reports in question in this case. Trans Union assigns code numbers and passwords to its subscribers, who use them to access Trans Union's consumer credit report data base. During the relevant time period, one of the codes that Trans Union assigned to BAAF was Code 1702F0000292 ("the Code"). Trans Union bills its customers by subscriber code, and invoices generated by Trans Union between November 1999 and July 2000 show that Trans Union billed the Code to BAAF for accessing Plaintiffs' credit reports.
 
 
 4
 BAAF maintains that it did not authorize the acquisition of Plaintiffs' credit reports. It asserts that Trans Union initially issued the Code to Oxford Resources Corporation of Melville, N.Y., a company that merged into BAAF in 1998. E-mail correspondence among BAAF employees in the Spring of 1999 shows that some employees questioned the Code's continued validity and suggested its deactivation, but an employee from BAAF's Melville office responded that her office still needed to use the Code until that office switched to a new integrated system.
 
 
 5
 According to BAAF, its Melville office moved from the old Oxford credit review system to the new integrated BAAF system "some time in September 1999." The new system employed different subscriber codes for each of the credit reporting agencies (including Trans Union) and use of the Code was supposed to be discontinued after an "allowance of a period of time for existing applications to complete the underwriting process in the old system." Nonetheless, additional e-mail correspondence reveals that BAAF employees discovered in May 2000 that Trans Union had been and was continuing to generate invoices in connection with the Code. After confirming that no legitimate use of the Code existed, BAAF instructed Trans Union to deactivate the Code in July 2000.
 
 
 6
 Seven months later, in February 2001, Plaintiffs filed this action against BAAF, seeking compensatory damages for "dissemination of personal financial information; invasion of privacy; and impairment of their ability to obtain credit," as well as punitive damages, costs, and legal fees.[1] Plaintiffs allege that because BAAF or one of its employees "knowingly[,] willfully and intentionally" obtained Plaintiffs' consumer reports without an authorized purpose, BAAF is liable to them for actual and punitive damages under 15 U.S.C. § 1681n and Md.Code Ann., Com. Law § 14-1213(a). Alternatively, Plaintiffs allege that BAAF negligently breached a duty owed to them to implement and maintain procedures to prevent violations of the Act and hence is liable for actual damages under 15 U.S.C. § 1681o and Md.Code Ann., Com. Law § 14-1213(b).
 
 
 7
 After Plaintiffs filed suit, BAAF conducted a variety of tests, including a forensic examination, all of which purportedly indicate that the Code was not used on the new system or on the computers in the Melville office. One of BAAF's experts opined that, based on his review of 277 hard drives in the Melville office, a forensic examination conducted by BAAF on these computers "would have to a reasonable degree of certainty identified instances" of uses of the Code on the target computers. BAAF also presented the affidavit of Trans Union's vice-president, stating that Trans Union did not know if BAAF actually accessed or obtained the credit information for which it was invoiced. Extensive discovery by Plaintiffs failed to yield any information as to who actually used the Code to obtain the credit reports or how the reports were obtained.
 
 
 8
 The district court granted BAAF summary judgment and Plaintiffs now appeal.[2] We review the district court's award of summary judgment de novo, recognizing that a court should grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law. See, e.g., Jakubiak v. Perry, 101 F.3d 23, 26 (4th Cir.1996).
 
 II.
 
 9
 The Fair Credit Reporting Act imposes civil liability on any "person" (which includes any corporation or other entity, 15 U.S.C. § 1681a(b)) who willfully, § 1681n, or negligently, § 1681o, fails to "comply with any requirement imposed" under the Act. See 15 U.S.C. §§ 1681n, o. The Maryland Credit Reporting Agencies Act contains virtually identical provisions. See Md.Code Ann., Com. Law §§ 14-1213(a), (b). Because relief under the state statute precisely parallels that under FCRA, for ease of reference, we refer within only to the FCRA.
 
 A.
 
 10
 Plaintiffs principally assert that BAAF is liable under § 1681n, which provides "any consumer" a cause of action against "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter." 15 U.S.C. § 1681n(a). Plaintiffs maintain that BAAF willfully failed to comply with the FCRA "requirement" that "[a] person ... not use or obtain a consumer report for any purpose" not authorized under the Act. 15 U.S.C. § 1681b(f).[3]
 
 
 11
 To prove willfulness under the Act, Plaintiffs must "show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer." Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 418 (4th Cir.2001) (internal quotation marks and citation omitted). Plaintiffs maintain that the e-mail correspondence among BAAF employees evidences such a knowing or intentional FCRA violation. Brief of Appellants at 18. However, examination of these e-mails reveals only that BAAF employees in May 2000 had "no idea why or who" was still using the Code (or whether it was still being used "for valid business") and suggested deactivation of the Code immediately upon learning of a possible impermissible use. These e-mails do not show that anyone at BAAF "knowingly and intentionally" obtained Plaintiffs' credit reports "in conscious disregard for the rights of the consumer." Dalton, 257 F.3d at 418. Accordingly, as the district court held, the Plaintiffs have failed "to produce any evidence whatsoever of knowing, intentional, or willful" FCRA violations by either BAAF or any of its employees.[4]
 
 B.
 
 12
 Alternatively, Plaintiffs contend that BAAF is liable under § 1681o for negligently failing to implement and maintain procedures to prevent violations of the Act. Section 1681o provides a cause of action to "any consumer" against "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter." Thus § 1681o, like § 1681n, merely provides a consumer with a remedy for violations of a "requirement" of the FCRA; it does not itself set forth any "requirement," A consumer can use the remedy provided in § 1681o only to enforce a requirement mandated elsewhere in the FCRA.
 
 
 13
 Before the district court, Plaintiffs apparently recognized the limits of § 1681o and based their § 1681o negligence claim on a requirement found in § 1681e — to maintain reasonable procedures that limit the furnishing of consumer credit reports for permissible purposes. However, § 1681e imposes no requirements on users or subscribers of credit reports like BAAF. Rather, § 1681e only imposes requirements on consumer reporting agencies. See 15 U.S.C. § 1681e (requiring "[e]very consumer reporting agency" to "maintain reasonable procedures ... to limit the furnishing of consumer reports" to permissible purposes (emphasis added)). On appeal, Plaintiffs do not contend that the district court erred in finding that BAAF is not a consumer reporting agency, nor do they argue that § 1681e provides them with a basis for recovery on their § 1681o negligence claim.
 
 
 14
 Plaintiffs do, however, continue to advance, albeit very summarily, their claim that BAAF violated § 1681o by acting negligently. Tellingly, they do not point to any alleged "requirement" under the Act that BAAF negligently failed to meet.[5] Instead, Plaintiffs argue that they can rely on the doctrine of res ipsa loquitur, i.e. the "thing speaks for itself." Plaintiffs seem to believe that this doctrine eliminates their need to prove that the FCRA imposes a requirement or duty on users and subscribers that BAAF can be said to have breached. The doctrine of res ipsa loquitur, however, simply permits a jury to infer, in certain circumstances, "both negligence and causation from the mere occurrence of the event and the defendant's relation to it"; it does not eliminate a plaintiff's obligation to prove that the defendant owed a duty to the plaintiff in the first place. Restatement (Second) of Torts § 328D cmt. b (1965). Indeed, the American Law Institute's classic statement of the res ipsa loquitur doctrine clearly explains that a plaintiff can rely on res ipsa loquitur to prove causation only if "the indicated negligence is within the scope of the defendant's duty to the plaintiff." Id. § 328D(1)(c) (emphasis added). Thus, the doctrine of res ipsa loquitur does not assist Plaintiffs here.
 
 
 15
 Philbin v. Trans Union Corp., 101 F.3d 957 (3d Cir.1996), on which Plaintiffs heavily rely, does not hold to the contrary. In that case, the plaintiffs did not sue a subscriber or user of credit reports like BAAF, but instead sued Trans Union, a consumer reporting agency. As noted above, § 1681e of the Act does impose requirements or statutory duties on consumer reporting agencies, and in Philbin, unlike the case at hand, the plaintiffs proffered evidence, which the credit reporting agency itself conceded sufficed to preclude summary judgment in its favor, that the agency failed to comply with those requirements or duties. Id. at 963. The consumer reporting agency maintained, however, that the plaintiffs had not forecast evidence that the agency's breach of its statutory duties caused the plaintiffs' damages. Id. In that context, the Third Circuit suggested that the plaintiffs might be able to rely on the res ipsa loquitur doctrine to prove causation. Id. at 965. Thus, Philbin nowhere suggests that the doctrine could be used to prove a duty, as Plaintiffs here seek to use it.
 
 
 16
 Accordingly, we affirm the district court's order granting summary judgment to BAAF on Plaintiffs' FCRA and analogous state law claims.[6]
 
 III.
 
 17
 For all of these reasons, judgment of the district court is in all respects
 
 
 18
 
 AFFIRMED.
 
 
 
 
 Notes:
 
 
 [1]
 Plaintiffs also sued Bank of America Corporation, even though Bank of America's name appears nowhere on Plaintiffs' credit reports. Plaintiffs asserted that Bank of America was liable to them as BAAF's corporate parent. Bank of America, however, offered sworn evidence that BAAF is a wholly separate corporate entity from Bank of America and Plaintiffs proffered no contrary evidence. For this reason, we affirm the district court's grant of summary judgment to Bank of America on all claims asserted against it
 
 
 [2]
 During the frequently contentious discovery in this case, Plaintiffs learned that Bank of America, F.S.B. holds a mortgage on the principal residence of the magistrate judge handling discovery matters. Plaintiffs then moved to recuse the magistrate judge on this basis, asserting that 28 U.S.C. § 455(a)(2000) required his recusal. The district court affirmed the magistrate judge's denial of the recusal motion, and Plaintiffs also appeal that order. Section 455(a) requires recusal when "the judge's impartiality might be questioned by a reasonable, well-informed observer who assesses all the facts and circumstances."United States v. DeTemple, 162 F.3d 279, 286 (4th Cir.1998) (internal quotation marks and citation omitted). As the magistrate judge concluded, "a reasonable, well-informed observer" could not legitimately question the judge's impartiality in the present case. Indeed, even if the mortgagee, Bank of America, F.S.B., was a proper party, but see supra at 4 n. 1, the litigation could in no way affect a routine debt like a mortgage, which is fully secured by appraised value in excess of the debt. Because the motion to recuse was therefore completely without merit, we affirm its denial.
 
 
 [3]
 In the district court, Plaintiffs brought their § 1681n claim in conjunction with the FCRA criminal provision, § 1681q, which we and other courts, prior to 1997, used to impose civil liability for using and obtaining a credit report without a permissible purposeSee Yohay v. City of Alexandria Employees Credit Union, Inc., 827 F.2d 967, 971-72 (4th Cir. 1987). In 1997, however, Congress added § 1681b(f), rendering the use of § 1681q to impose civil liability for improperly using and obtaining credit reports largely unnecessary. Consumer Credit Reporting Reform Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009-426, -433 (Sept. 30, 1996). Plaintiffs note the addition of § 1681b(f) on appeal, Brief of Appellants at 15 n. 4, and we analyze Plaintiffs' § 1681n claim within referencing § 1681b(f), rather than § 1681q. We note, however, that an analysis under § 1681q would yield an identical result.
 
 
 [4]
 The same lack of evidence as to willfulness defeats the claim, alleged in Plaintiffs' complaint and stated, but not otherwise pursued, on appeal, that BAAF violated the Consumer Fraud and Abuse Act by "intentionally access[ing] a computer without authorization or exeed[ing] authorized access and thereby obtain[ing]... information contained in a file of a consumer reporting agency on a consumer."See 18 U.S.C. § 1030(a)(2) (2000).
 
 
 [5]
 Plaintiffs do not assert that BAAF negligently used or obtained their credit reports for an impermissible purpose in violation of the "requirement" in § 1681b(f); that claim would, in any event, be futile in this case. To prevail on it, Plaintiffs would have to show that BAAF can be held vicariously liable for the action of the unknown person who used the Code to obtain the reports; the only potentially plausible ground for vicarious liability in this case is apparent authority. However, Plaintiffs have cited no case or treatise suggesting that apparent authority can be extended to an instance where, as here, no specific employee or group of employees is identified as having exercised that authority. To extend the reach of apparent authority in this case would effectively render a subscriber strictly liable any time a code supplied to it by a credit reporting service is used. In the absence of any precedent compelling this dramatic result, we decline to reach it
 
 
 [6]
 We also affirm the district court's denial of Plaintiffs' motion to amend their complaint to add class action allegations. Because BAAF is entitled to summary judgment on Plaintiffs' claims and because the claims of the putative class are identical to those of Plaintiffs, their motion to amend was futileSee Shealy v. Winston, 929 F.2d 1009, 1013-14 (4th Cir.1991) (affirming denial of motion to amend where amendment would not have cured deficiencies in plaintiff's case entitling defendant to summary judgment, on grounds of futility). Similarly, the district court did not err in failing to address Plaintiffs' request to remove various references to "John Doe" defendants because such removal would have had no meaningful effect on the analysis or result.