RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DAVID ALAN SMITH,

     *Plaintiff-Appellee/Cross-Appellant,*

    *v.*

     Nos. 15-2329/2330

LEXISNEXIS SCREENING SOLUTIONS, INC.,

     *Defendant-Appellant/Cross-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:13-cv-10774—Mark A. Goldsmith, District Judge.

Argued: June 14, 2016

Decided and Filed: September 13, 2016

Before: SILER, ROGERS, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Thomas J. Piskorski, SEYFARTH SHAW LLP, Chicago, Illinois, for Appellant/Cross-Appellee. James A. Francis, FRANCIS & MAILMAN, P.C., Philadelphia, Pennsylvania, for Appellee/Cross-Appellant. **ON BRIEF:** Thomas J. Piskorski, Frederick T. Smith, Kara L. Goodwin, SEYFARTH SHAW LLP, Chicago, Illinois, for Appellant/Cross-Appellee. John Soumilas, FRANCIS & MAILMAN, P.C., Philadelphia, Pennsylvania, Ian B. Lyngklip, LYNGKLIP & ASSOCIATES CONSUMER LAW CENTER, PLC, Southfield, Michigan, for Appellee/Cross-Appellant. Alan Butler, ELECTRONIC PRIVACY INFORMATION CENTER, Washington, D.C., for Amicus Curiae.

---

**OPINION**

---

ROGERS, Circuit Judge.   Great Lakes Wine and Spirits contracted with LexisNexis to carry out criminal history checks for employment applicants.  Great Lakes provided Lexis with David Alan Smith's date of birth but not his middle name.  Lexis's check returned a fraud conviction of a man named David *Oscar* Smith, resulting in six weeks' delay in David Alan Smith's being hired.  Lexis had requested, but not required, the input of a middle name, and did not cross-reference the criminal history report with a credit report that showed Smith's middle initial.  Smith sued under the Fair Credit Reporting Act (FCRA).  Following a jury trial, the court awarded Smith $75,000 in compensatory damages for six weeks of lost wages, emotional distress, and harm to his reputation, plus $150,000 in punitive damages.  Both parties appeal.  Although a reasonable jury could conclude that Lexis negligently violated the FCRA by not requiring Smith's middle name, there is not sufficient evidence of willfulness to support punitive damages.  A partial reversal is accordingly required.

David Alan Smith's employer, Tasson Distributing, was sold to Great Lakes Wine and Spirits in 2012.  Former Tasson employees were not guaranteed a position with Great Lakes.  Each employee had to apply for a Great Lakes job.  Smith applied for the position of delivery driver, the same position he held at Tasson.

Great Lakes sent Smith an email less than a week later offering him a full-time merchandiser position instead of his desired job.  The merchandiser position paid $11 per hour, which was $5 less per hour than he made as a delivery driver at Tasson.  The employment offer stated that "[c]ontinued employment, subsequent to this offer, is conditional based upon your satisfactory completion of a . . . credit check . . . and criminal history check."  Smith, authorizing the checks, provided Great Lakes with his first, middle, and last name, Social Security number, driver's license number, date of birth, sex, street address, and phone number.

Great Lakes contracted with LexisNexis Screening Solutions to complete the checks.  Neither party disputes that Lexis is a consumer reporting agency (CRA) as defined by the FCRA.

When Lexis received Smith's credit report from Equifax, the report listed his name as "David A. Smith." For the criminal history check, Great Lakes wanted Lexis to perform a database report, for which Lexis searches its database that contains raw criminal data from court systems and other government agencies.

In conducting a database search, Lexis inputs the information provided to it by the customer—in this case, Great Lakes. Lexis required Great Lakes to provide, per its standard procedure: Smith's first name, last name, and date of birth. Lexis will only include a criminal record on a criminal background report if the record matches all three of these pieces of information. Lexis also had fields in its order form for Smith's middle name and Social Security number, but Lexis did not require this information. Great Lakes did not provide Smith's middle name to Lexis but did provide Smith's Social Security number. There was evidence suggesting that Lexis's processes and procedures for running the criminal history check meet or exceed industry standards.

At the time of Smith's criminal history check, Lexis ran and sold roughly 10 million criminal background reports a year. Lexis tracks the overall dispute rate for its criminal background reports. Lexis's data shows that 99.8% of its reports are never disputed, which means that the dispute rate is only .2%. This .2% rate includes database searches like the one Lexis conducted on Smith for Great Lakes.

Lexis searched its database for criminal records that matched Smith's first name, last name, and date of birth. The search returned two sources—Bay County, Florida Circuit and County Courts, and the Florida Department of Corrections—as having criminal records for a David Smith born on March 12, 1965. This, however, was David *Oscar* Smith, not the David *Alan* Smith who applied for the job with Great Lakes. The records were for David Oscar Smith's uttering a forged instrument. Because Lexis did not receive a middle name from Great Lakes, it could not exclude the middle name "Oscar" from the results. The criminal records did not contain a Social Security number, so Lexis could not exclude them on that basis. Because the criminal records matched Smith's first name, last name, and date of birth, Lexis included them in the report it provided to Great Lakes.

About December 17, 2012, Smith received a letter from Great Lakes stating that it was rejecting his application for employment. The letter stated that the action was "influenced by information in a consumer report" made by Lexis at the request of Great Lakes, but that Lexis "did not make the adverse decision and cannot provide the reason for the decision." The letter included a copy of the background report. Although Vicki Strawsine, the Human Resources Director for Great Lakes, was suspicious of the report, she did not hire Smith and believed that it was his responsibility to contact Lexis in order to correct the report before Great Lakes would hire him.

The same day that Smith saw the letter and the attached report, Smith contacted Great Lakes to state that the information in the report was incorrect. Great Lakes directed him to Lexis to dispute inaccuracies. Smith then contacted Lexis and faxed Lexis his driver's license so that Lexis could conduct a proper investigation into the inaccuracies. Lexis sent Smith a letter on January 11, 2013, stating that the investigation had concluded and the disputed criminal history had been removed. The letter also stated that Lexis sent Great Lakes a copy of the corrected report. On January 29th, six weeks after receiving the initial letter from Great Lakes revoking his employment offer, Smith began working for Great Lakes as a delivery driver.

Smith's lost wages for the job of merchandiser during this period allegedly amounted to $2,640. With Smith and his wife's financial situation already unsteady, his lack of employment during the six-week stretch caused them to fall on hard times. Smith stated that he was "down in the dumps," "depressed," and did not know how he was going to make a living. He did not seek medical treatment for these negative feelings. He also claimed that the owner of a party store at one point referred to Smith in a jocular manner as the owner's "favorite felon."

The testimony of Smith's wife corroborated Smith's downward turn in mood during the six-week period. She testified that Smith was "a bit angry about not being able to pay the bills, . . . short with [her], . . . [and] depressed that he couldn't provide for his family." She said that the struggle to make ends meet financially was the main reason why Smith was stressed during the time he was unemployed. When Smith and his wife were both employed, they brought home "just enough" money after taxes to pay their monthly bills. Without Smith's income stream, the couple went into the red. In order to pay the bills during the six-week period,

Smith had to borrow money from his parents and his sister, an action that left him feeling "ashamed."

Smith filed suit against Lexis, asserting that Lexis violated 15 U.S.C. § 1681e(b), part of the FCRA, by failing to follow reasonable procedures that would assure maximum possible accuracy in the information it reported to Great Lakes. The case proceeded to a jury trial. Lexis made an oral motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). The district court took Lexis's motion under advisement and submitted the case to the jury. The jury found in Smith's favor, finding that Lexis both negligently and willfully violated the FCRA provision, and awarded Smith $75,000 in compensatory damages as well as $300,000 in punitive damages. The district court then denied Lexis's motion for judgment as a matter of law after requiring supplemental briefing. *Smith v. LexisNexis Screening Solutions, Inc.*, 76 F. Supp. 3d 651, 653, 657 (E.D. Mich. 2014) (order denying motion for a judgment as a matter of law).

After the court denied the initial motion, Lexis filed a renewed motion for judgment as a matter of law or, in the alternative, for a new trial and/or remittitur. The district court denied the renewed motion for judgment as a matter of law. *Smith v. LexisNexis Screening Solutions, Inc.*, 138 F. Supp. 3d 872, 877 (E.D. Mich. 2015) (order denying renewed motion for a judgment as a matter of law). The court held that there was sufficient evidence from which a reasonable jury could conclude that Lexis's failure to require a middle name and its failure to cross-reference the credit report, which contained Smith's middle initial, with the criminal records were both negligent and willful violations of the FCRA provision. *See id.* at 879-82. The district court also held that there was sufficient evidence of economic loss and emotional distress to submit the claim to the jury. *Id.* at 887-89. Thus, the court denied in full Lexis's renewed motion for judgment as a matter of law.

The district court denied in part and granted in part Lexis's motion for a new trial and/or remittitur. The court reiterated its analysis regarding the sufficiency of the evidence and held that it also supported a denial of the motion for a new trial, because the jury's verdict was not "against the weight of the evidence." *Id.* at 890. Also, Lexis did not meet its burden of showing that mistakes were made during trial that warranted a new trial. *Id.* at 899. However, on the issue of remittitur, the court granted the motion and reduced the punitive damages to $150,000.

*Id*. at 888-98.   The court first stated that the award of $75,000 for compensatory damages, although possibly sitting "on the high end of what would be appropriate," did not warrant remittitur, because it did not shock the court's conscience or differ too greatly from awards that other courts in analogous cases had deemed appropriate.  *Id*. at 893.   The court then analyzed whether the award of $300,000 for punitive damages was excessive, and the court concluded that it was.[1]  *Id*. at 898.   According to the court, because Lexis's conduct in this case was not very reprehensible, and because the highest constitutional ratio of compensatory damages to punitive damages was 2:1 in this case, the punitive damages award had to be reduced to $150,000.  *Id*. at 895-96.

Lexis appeals and argues that there is no evidence from which a reasonable jury could conclude that Lexis either negligently or willfully violated the FCRA.  Lexis also argues that the evidence does not support the awards of compensatory or punitive damages.  Smith appeals the district court's decision to reduce the punitive damages to $150,000, arguing that Lexis's conduct was sufficiently reprehensible and that the 4:1 ratio between the jury's awards for compensatory and punitive damages was constitutionally appropriate.  Because there is sufficient evidence of negligence but not of willfulness, only compensatory but not punitive damages were appropriate in this case.

Although it is a close call, the evidence in the record was sufficient to support the jury's finding of negligence.  Lexis required Smith's birthdate in addition to his first and last name, and this additional requirement certainly lowered the possibility of a false positive.  Lexis also has a policy of using Social Security numbers—when provided—to further lower that possibility. Further, Lexis points to the fact that this was a single mix-up corrected shortly after Smith made Lexis aware of it and argues that its .2% dispute rate is evidence that the risk of this inaccuracy's occurrence was close to non-existent.  But the relevant statutory language and Smith's particular situation cut against Lexis.   15 U.S.C. § 1681e(b) mandates that CRAs "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."   "David Smith" is an exceedingly common first-and-last-name

---

[1]The court analyzed the distinction between claims that punitive damages are constitutionally excessive and claims for remittitur.  *Id*. at 896-98.  Because Lexis argued that the punitive-damages award was constitutionally excessive, the court tailored its relief to that claim.

combination—to the tune of over 125,000 individuals living in the United States. The jury could conclude that a reasonably prudent CRA, when presented with such a common name, would have required additional identifying information—like a middle name—to heighten the accuracy of its reports. The fact that requiring a middle name is an inarguably reasonable procedure (considering Lexis already had a field for middle names on the form that Great Lakes filled out) is what tips the scales against Lexis. Moreover, because the Florida criminal records for David Oscar Smith did not contain a Social Security number, Lexis's use of Smith's Social Security number would not have helped. Thus, although there is evidence that Lexis attempted to ensure that its reports produced a very low rate of false positives, there is sufficient record evidence supporting the jury's conclusion that Lexis's failure to require a middle name constituted negligence.

The discrepancy between the credit report from Equifax, which named "David A. Smith," and the criminal records, which named "David Oscar Smith," provides a little additional weight in Smith's favor. At the time Lexis provided the report to Great Lakes, Lexis had within its possession a credit report from Equifax that named "David A. Smith" as the subject. Lexis could have cross-referenced this name with the name on the criminal records, which was "David Oscar Smith." A failure to cross-reference such information, standing alone, might not have any bearing on whether a CRA's actions were reasonable. *See Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004). In this case, however, the fact that Lexis possessed a report with Smith's middle initial serves as additional evidence supporting the jury's finding as to negligence.

Although the jury could find that Lexis was negligent in compiling Smith's report, that is a far cry from being willful. In order to willfully violate the FCRA, a CRA's action must entail "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (internal quotation marks and citation omitted). According to Smith, the risk of which Lexis should have known was that failing to require a middle name before it ran a report would not "assure maximum possible accuracy" as required by the FCRA. This argument, however, fails to acknowledge Lexis's efforts to combat inaccuracies: requiring an individual's first name, last name, and birthdate, and also—when

provided—using a middle name and Social Security number. These procedures have kept Lexis's dispute rate at just .2%, which is remarkably low. Furthermore, a single inaccuracy, without more, does not constitute a willful violation of the FCRA. *See Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004). Although this inaccuracy might have resulted from Lexis's carelessness, it did not result from Lexis's disregarding a high risk of harm of which it should have known. The district court thus should have granted judgment as a matter of law with respect to the willfulness claim.

*Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409 (4th Cir. 2001), buttresses this conclusion. In that case, a CRA conducted a criminal history check and reported that the plaintiff had been convicted of a felony. *Id.* at 413. As a result, the plaintiff's prospective employer withdrew its offer of employment. *Id.* In analyzing the plaintiff's FCRA claim against the CRA, the Fourth Circuit stated that no reasonable jury could conclude that the CRA acted willfully. *Id.* at 418. The record, according to the court, lacked any evidence of willfulness: there was no evidence that other individuals had lodged complaints similar to the plaintiff's, the CRA's track record with its procedures had been reliable, and the CRA corrected its mistake shortly after the plaintiff challenged the accuracy of the report. *Id.* The Fourth Circuit also held that, despite these facts, a reasonable jury could conclude that the CRA acted negligently. *Id.* The same is true in this case. Smith has presented no evidence that anyone had lodged similar complaints against Lexis. Further, Lexis's low dispute rate showed that its procedures had been generally reliable. Finally, Lexis corrected the mistake not long after Smith complained—there was no protracted process before the record was set straight. The facts of the present case therefore line up neatly with the facts in *Dalton*, and *Dalton* supports the conclusion that Lexis negligently—but not willfully—violated the FCRA.

Regarding damages, the record evidence is sufficient to support the jury's award of compensatory damages. Smith and his wife testified that Smith was depressed, angry, stressed, and "down in the dumps" due to their financial woes when he was unemployed. Smith testified that he had to borrow money from family members to make ends meet, which made him feel "ashamed." Smith further testified that the owner of a party store in town jokingly called Smith his "favorite felon," a comment that a reasonable jury could conclude caused embarrassment and

anger.    Plaintiffs are required to allege more than "mere conclusory statements" and must "reasonably and sufficiently explain[] the circumstances" surrounding their emotional injuries. *Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 361 (6th Cir. 2005).    Lexis argues that Smith's and his wife's testimony is merely conclusory and is not sufficient to warrant an award for emotional distress.    Smith's and his wife's statements, however, are extensive.    They describe his shame, anger, and stress that stemmed from financial hardships.    This situation, and particularly the financial hardships involved in it, is one with which reasonable jurors could identify and infer that a reasonable person in the same situation would suffer emotional distress. In *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004), *abrogated on other grounds by Burr*, 551 U.S. 47, the Seventh Circuit preserved the possibility of mental distress damages where "the facts are so inherently degrading that a jury could infer . . . emotional distress."    Here, Smith elicited enough evidence for a reasonable jury to conclude that he suffered emotional distress and was accordingly due damages.

The district court did not err in denying Lexis's motion to remit the award of $75,000 in compensatory damages.    That amount was not too far afield from awards in similar cases. Smith's alleged lost wages amounted to $2,640, which means that the remaining non-economic damages totaled at least $72,360.    The jury did not allocate the amount of damages among lost wages, emotional distress, and harm to reputation.    *Smith v. LexisNexis Screening Solutions, Inc.*, 138 F. Supp. 3d 872, 890-91 (E.D. Mich. 2015) (order denying renewed motion for a judgment as a matter of law).    Lexis argues that the $72,360 amount is clearly excessive in light of other, similar cases.    Lexis breaks down the awards in the other cases into per-week amounts and multiplies those amounts by the four weeks it took Lexis to correct Smith's credit report in order to demonstrate the excessiveness of the award in this case.**[2]**    Although the $72,360 might be a higher per-week amount than the awards in many of the cases Lexis cites, juries are not required to award compensatory damages based only on the temporal extent of suffering.    Furthermore, as stated above, there was ample record evidence of Smith's distress.    A district court is allowed to interfere with a jury's award "only when, after reviewing all the evidence in the light most favorable to the prevailing party, [the court] is convinced that the verdict is clearly excessive;

---

**[2]**In fact, Lexis's FCRA violation was the but-for cause of Smith's unemployment for six weeks, not four.

resulted from passion, bias, or prejudice; or is so excessive or inadequate as to shock the conscience of the court." *Am. Trim., L.L.C. v. Oracle Corp.*, 383 F.3d 462, 475 (6th Cir. 2004). This is a very deferential standard, as juries have broad discretion to set damages amounts. The severity and the extent of Smith's woes, viewed through an appropriately deferential lens, demonstrate that the district court's denial of Lexis's motion to remit the $75,000 award was not in error.

Punitive damages, however, are not appropriate in this case. The FCRA provides for an award of punitive damages only for willful violations of the statute. 15 U.S.C. § 1681n(a)(2); *see also Bach*, 149 F. App'x at 364. Because the record contains no evidence of willfulness, the award of punitive damages cannot stand.

The district court's judgment is accordingly reversed regarding willfulness and punitive damages, and the judgment is affirmed on all other grounds. The case is remanded for entry of an order consistent with this opinion.