[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-14348

Non-Argument Calendar

_____

SEGUNDO TOSTE,
individually,

Plaintiff-Appellant,

versus

THE BEACH CLUB AT FONTAINEBLEAU PARK
CONDOMINIUM ASSOCIATION, INC.,
Aventura, a Florida Corporation,

Defendant,

RUSSELL S. JACOBS, P.A.,
PABLO A. ARRIOLA,

individually,

SCOTT R. SHAPIRO,

individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-23771-KMM

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Segundo Toste fell behind on his monthly payments to his condominium association, and eventually the association referred the matter to a law firm, Russell S. Jacobs, P.A. The law firm attempted to collect the debt—first by threatening to file a claim of lien against his condominium, and then by filing a claim of lien and threatening to foreclose on it if Toste did not pay more than $10,000 in past-due association fees, interest, late fees, attorney's fees, and costs.

That total seemed excessive to Toste. After trying unsuccessfully to obtain an explanation of the charges from the association and the law firm, Toste consulted with an attorney to help him

determine how much he really owed and what the legal consequences would be if he paid less than the collection letters demanded, or if he overpaid.

With the help of an accountant, Toste and his attorney determined that the collection letters and the claim of lien likely misstated the amount of his debt by including interest charges, late fees, and finance charges that were impermissible under Florida law and his agreement with the association. Toste ultimately hired the attorney to file this lawsuit alleging that the association and its lawyers had violated the Fair Debt Collection Practices Act through their collection efforts. After a year of litigation, during which Toste reached a settlement agreement with and voluntarily dismissed his claims against the association, the remaining defendants moved to dismiss the lawsuit for lack of jurisdiction.

The district court determined that Toste lacked standing to bring the lawsuit because the defendants' actions had not caused him any concrete injury. It therefore granted the defendants' motion and dismissed Toste's complaint.

Our precedents have made clear that the harm that Toste described—including time wasted in trying to determine the correct amount of his debt and emotional distress manifesting in loss of sleep—can be sufficiently concrete to confer Article III standing. After a careful review of the record and the parties' briefing, we conclude that under the facts presented here, Toste's wasted time and emotional distress were adequate to satisfy the constitutional requirements for standing, as was the lien on his property for more

4                        Opinion of the Court                    21-14348

than he owed.[1] We therefore vacate the district court's judgment and remand for further proceedings consistent with this opinion.

## I.

Toste argues that he has Article III standing with respect to three claims raised in his amended complaint.[2] *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (quotation omitted)). In Count One, Toste alleged that the law firm and one of its lawyers (Pablo Arriola) violated the FDCPA in its September 2019 notice of intent to file a claim of lien by overstating the amount of his debt to the association; seeking to collect interest and late fees beyond those permitted under Florida law and his agreement with the association; and threatening to file a claim of lien in a communication that

---

[1] We do not express or imply an opinion on the merits of any of Toste's claims, including whether the defendants' conduct violated the FDCPA as Toste alleged.

[2] The district court dismissed Toste's claims against the association at his request. Toste brought a fourth claim (for negligent misrepresentation) in his amended complaint, but he effectively abandoned it by filing a notice purporting to dismiss the claim voluntarily. The attempted voluntary dismissal was ineffective because it was not filed "before the opposing party serve[d] either an answer or a motion for summary judgment;" it was not accompanied by "a stipulation of dismissal signed by all parties who have appeared" and the court did not enter an order of dismissal. Fed. R. Civ. P. 41(a). The conduct alleged as the basis for the negligent misrepresentation claim is the same as for Counts One, Two, and Three, so our analysis of Article III standing for those three claims applies equally to the abandoned Count Four.

misstated his debt and failed to provide information required by Florida law. *See* 15 U.S.C. §§ 1692e, 1692f.

In Count Two, Toste alleged that the law firm violated the FDCPA in its November 2019 debt-collection letter by again misstating the amount of his debt and attempting to collect impermissible charges, and by threatening to foreclose on a claim of lien filed against his condominium if he did not pay the amount stated in the letter. *See id.* He also alleged that the firm misled and confused him about his debt by demanding inconsistent amounts in its September 2019 letter, the claim of lien, and the November 2019 letter.

And in Count Three, Toste alleged that the firm and another of its lawyers (Scott Shapiro) violated the FDCPA by filing the claim of lien in the public record and thereby communicating with a third party about his debt without his permission. *See* 15 U.S.C. § 1692c(b). For all three claims, Toste alleged that the defendants' actions caused him to suffer emotional distress and cost him time, money, and effort in trying to "determine, verify, and dispute the amounts being sought against him." He sought actual and statutory damages under the FDCPA, costs and attorney's fees, and "[s]uch other and further relief as the Court deems just and equitable."

In his deposition testimony and in an affidavit filed in response to the defendants' motion to dismiss for lack of standing, Toste provided additional detail about the harm he claimed to have

suffered from the defendants' alleged statutory violations.[3]  He testified that after receiving the September 2019 notice of the firm's intent to file a claim of lien against his condominium, he made an extra trip to the association office and asked for an explanation of the "total crazy number" ($8,688.43) listed in the letter as the amount of his debt.  He was told that he would have to speak to the association's attorneys.

A few weeks later, Toste received the law firm's letter notifying him that a claim of lien had been filed against his condominium and that, if he did not pay his debt (which the firm said had grown to more than $10,000), the association would begin foreclosure proceedings.  He recognized that the situation was serious, and he called the law firm to try to find out how much he really owed and to get a breakdown of the charges.  The person he spoke to when he called the law firm refused to give him an explanation of the charges listed in the firm's letters and reiterated the threat that if he did not make some arrangement to pay the amount the law firm said he owed, the association would foreclose on the lien.

Toste, who had been through foreclosure proceedings before, worried that he would end up losing his home over $10,000

---

[3] Because the defendants raised a factual challenge to subject matter jurisdiction (rather than a facial challenge), the district court was free to go beyond the complaint and examine record evidence such as depositions and affidavits, and we do the same. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013); *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1235 (11th Cir. 2019).

that he believed far exceeded his actual debt to the association. He worried what he and his children would do if that happened. He felt that he would not get anywhere trying to fight the law firm on his own, so he found a lawyer to represent him and "talk to them or get into an agreement or to do something about it." In his affidavit, Toste testified that he retained an attorney to (among other things) assist him in "determining whether the amounts sought were correct," "whether a legal basis existed to collect such amounts," "what the consequences were of paying a different amount," and how much he really owed.

According to Toste, the injuries he suffered as a result of the defendants' misrepresentations concerning the amount of his debt included a claim of lien reflecting an inaccurate debt filed against his property; significant time wasted "to determine whether the amounts sought were correct, and whether to make payments in response to the communications, contesting and preparing to contest the amounts sought in each of Defendants' communications, taking time away from [his] work and personal life"; confusion over the amount he owed, resulting in his being unable to pay what he owed and resolve the matter without legal assistance; and emotional distress manifesting in "loss of sleep, extreme stress, frustration, anger, agitation, and anxiety."

The district court concluded that Toste had not shown an injury sufficient to confer standing because (1) his emotional injuries were insubstantial and lacked real negative consequences; (2) wasted time was not a sufficient injury to confer standing;

(3) fees and costs incurred in bringing the lawsuit could not create standing where none existed based on the underlying claims; (4) informational injury without adverse consequences could not satisfy Article III; and (5) any risk of harm caused by the defendants' actions dissipated before Toste filed his complaint because he knew by then that the firm's letters misstated the amount of his debt and because, since the firm had been fired by the association before the lawsuit was filed, the defendants would have no role in any future foreclosure proceedings. The court therefore dismissed Toste's lawsuit for lack of jurisdiction. Toste appeals the dismissal.[4]

## II.

Whether a plaintiff has standing to bring a claim in federal court "is a threshold jurisdictional question that we review de novo." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 923 (11th Cir. 2020) (en banc).

## III.

Article III of the Constitution limits our jurisdiction to "Cases" or "Controversies." U.S. Const. art. III, § 2. A plaintiff's standing to sue in federal court is an "essential component" of the

---

[4] After the close of briefing, the Appellees filed a Notice of Filing of Supplemental Authority pursuant to Federal Rule of Appellate Procedure 28(j), bringing to our attention a recent decision of the Fifth Circuit. The Appellant moved to strike the notice and accompanying authority on the ground that the Appellees had filed it as a notice rather than submitting it with an explanatory cover letter addressed to the clerk. We find those errors inconsequential and deny the motion to strike.

case-or-controversy requirement. *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019). To establish Article III standing, a plaintiff must show that he suffered an "injury in fact," that the defendants caused the injury, and that a favorable decision is likely to cure his injury or compensate him for it. *Trichell v. Midland Credit Mgmt.*, Inc., 964 F.3d 990, 996 (11th Cir. 2020).

Our focus here is on the injury-in-fact requirement. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). While a plaintiff cannot establish constitutional standing based solely on the defendant's "bare violation of a statute," he can do so by showing that the violation caused him some real harm—and in this context, "very nearly any level of direct injury is sufficient to show a concrete harm." *Muransky*, 979 F.3d at 920, 927; *see Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019) ("A concrete injury need be only an 'identifiable trifle.'" (quoting *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.14 (1973))).

The district court determined that Toste had not demonstrated an injury in fact partly because it considered his emotional damages and the time he spent trying to discover the true amount of his debt to be too insubstantial. Not so. We have explained that a plaintiff's wasted time, in particular, can be a concrete injury for

standing purposes. *Salcedo*, 936 F.3d at 1173; *see Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017). For example, we have found that a plaintiff stated a tangible injury for standing purposes where she alleged that she "lost time" trying to correct inaccuracies in her credit report. *Pedro*, 868 F.3d at 1280. And while we have not yet decided in a published opinion whether emotional distress alone is a sufficiently concrete injury for standing purposes, we have found standing where the plaintiff experienced both emotional distress manifesting in a loss of sleep and wasted time spent resolving problems caused by the defendant's mistakes. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021). Those are some of the same injuries Toste testified to here.

Certainly, "concrete harm from wasted time requires, at the very least, more than a few seconds." *Salcedo*, 936 F.3d at 1173. But Toste testified in his deposition and in his affidavit that he wasted at least several minutes in connection with each of the defendants' debt-collection letters. He testified that after he received the September 2019 letter notifying him that a lien would be filed against his property, he went in person to the association to try to discover the basis for the amount the law firm sought to collect, which he believed far exceeded what he owed. And after he received the November 2019 letter and claim of lien, he spent time on the telephone with the law firm trying to discover the basis for the amount the firm sought to collect, collecting and reviewing financial documents (including a "ledger" that the association finally provided after Toste announced his intention to hire a lawyer), and

retaining and working with an attorney and an accountant to identify the defendants' improper charges and miscalculations.

We recognize that, as the defendants have argued, the time and money that Toste spent on the FDCPA lawsuit itself cannot give rise to a concrete injury for Article III standing purposes. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit"). But here, Toste initially consulted with an attorney at least in part to help him accurately calculate his debt to the association, to advise him of the legal consequences of paying (or not paying) the sums demanded, to communicate with the law firm and the association about his debt and the claim of lien filed against his property, and to help him resolve the lien and fend off the threatened foreclosure proceedings. Time or money spent in defending against a legal action taken by a debt collector against the debtor is separable from the costs of bringing the debtor's own lawsuit. "Because there is no question that wasted time is a concrete harm, [Toste] has standing to pursue his claims so long as even a small part of the injury is attributable to" the defendants. *Losch*, 995 F.3d at 943.

In any event, if Toste's evidence is believed, the defendants caused concrete harm before Toste ever consulted with a lawyer, by filing a claim of lien against his home for an inaccurate amount and refusing to release the lien unless he paid more than he really owed. The resulting encumbrance on Toste's property was a tangible harm sufficient to give Toste standing for his claims that the

defendants' conduct in filing the lien and threatening to foreclose on it violated the FDCPA.

## IV.

Toste presented evidence that he suffered injuries—including an inaccurate claim of lien against his property; time spent trying to determine the correct amount of his debt, resolve the lien, and avoid the threatened foreclosure; and emotional distress manifesting in a loss of sleep—which are sufficiently tangible to confer Article III standing. The record also supports Toste's assertion that the injuries are fairly traceable to the defendants' alleged misconduct, and that a favorable verdict is likely to redress his injuries in the form of compensatory damages. He therefore has Article III standing to sue the defendants based on his claims that the alleged misconduct violated the FDCPA.

We vacate the district court's judgment and remand for further proceedings. Toste's "Motion to Strike Appellees' Notice of Supplemental Authority in Support of its Response Brief" is DENIED.

**VACATED AND REMANDED.**